IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| JOSHUA MCINTYRE, | Civ. No. 6:17-cv-00798-AA |
| Plaintiff, | **OPINION & ORDER** |
| v. | |
| DOUGLAS COUNTY, | |
| Defendant. | |

AIKEN, District Judge.

This matter comes before the Court on a Motion for Summary Judgment filed by Defendant Douglas County, ECF No. 47. Plaintiff has not responded to the motion and the time for doing so has passed. ECF Nos. 51, 57. The Court concludes that this motion is appropriate for resolution without oral argument. For the reasons set forth below, the motion is GRANTED and this case is DISMISSED. Final judgment shall be entered accordingly.

**LEGAL STANDARDS**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809

F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630-31.

## BACKGROUND

Plaintiff Joshua McIntyre was employed by Defendant Douglas County as a corrections officer at the Douglas County Jail beginning in 2003. Compl. ¶ 7. ECF No. 1. The requirements of Plaintiff's position included "regular and consistent attendance," with physical demands including "bending, climbing stairs, lifting up to 80 pounds, pulling, pushing, sitting, standing and walking." Vickers Decl. Ex. 1, at 3-4. ECF No. 48.

On November 1, 2013, Plaintiff fell down a set of stairs at work and tore a tendon in his left ankle. Compl. ¶ 8. Plaintiff filed a workers' compensation claim at

time of the injury and the claim was accepted. *Id*. Plaintiff returned to work in late November 2013 with a restriction to light duty. *Id*. at ¶ 9. Plaintiff was initially assigned to work in the jail's command center. *Id*. At his deposition, Plaintiff testified that he was no longer able to perform the physical requirements of his position following his injury. Vickers Decl. Ex. 1, at 4.

In April 2014, Plaintiff used sick time and took leave under the Family Medical Leave Act ("FMLA") when he and his son contracted pneumonia. Compl. ¶ 11. When Plaintiff returned to work, he was notified that he was being investigated for sick time abuse, but the investigation found that the allegations were unfounded. *Id*. at ¶ 12.

In May 2014, Plaintiff returned to work in the jail command center on light duty. Compl. ¶ 13. Plaintiff's supervisor, Sgt. Hughes, asked how long Plaintiff's workers' compensation period would last and proposed the idea of converting Plaintiff's position to a civilian one, which would have entailed a $10/hour pay cut. *Id*. Plaintiff objected to this proposal. *Id*.

In July 2014, Plaintiff took extended FMLA leave for a series of surgeries to repair his injury. Compl. ¶ 14. Plaintiff returned to work on light duty on April 7, 2015 and was assigned to work in the jail records room. *Id*. Plaintiff again went on FMLA leave between mid-October and mid-December 2015 for an additional surgery related to his work injury. *Id*.

When Plaintiff returned to work in December 2015, he was offered a light duty position in the command center but was reassigned to work night shifts in the records

room. Compl. ¶ 15. Plaintiff's medical restrictions indicated that he has the ability to stand, sit, and elevate his leg as needed and would be in a sedentary position where he would not be required to push, pull, stand, bend, or lift. Vickers Decl. Ex. 1, at 34. Plaintiff did not object to working in the records room. Vickers Decl. Ex. 1, at 6. When Plaintiff reported to work, the records clerk told him there was no work for him at the time and asked if he would be able to confirm warrants. Compl. ¶ 16. Plaintiff told the clerk that he was unable to do so because confirming warrants involved climbing stairs, which was beyond his limitations. *Id.* The sergeant on duty expressed dismay that Plaintiff was not taking calls for warrants. *Id.*

On December 12, 2015, Plaintiff was told he was under investigation for work performance for refusing to confirm warrants as part of his records room assignment. Compl. ¶ 17. Plaintiff was also accused of leaving work fifteen minutes early. *Id.* at ¶ 18. Plaintiff alleges that arriving and leaving fifteen minutes before the scheduled shift time was customary for jail employees. *Id.*

On the night of December 16-17, 2015, Plaintiff was assigned to work from 10:00 p.m. to 2:00 a.m. in the records room. Vickers Decl. Ex. 1, at 9. Plaintiff testified that he started his shift at approximately 9:40 p.m. *Id.* Plaintiff's time sheet showed that he had arrived for work at 9:38 p.m. Vickers Decl. Ex. 2, at 8. The records clerk left at midnight and Plaintiff was alone in the records room. Vickers Decl. Ex. 1, at 11. After the records clerk left for the evening, Plaintiff testified that he did "nothing" and "just sat there." *Id.* at 12-13. Shortly after midnight, a deputy sergeant called the records room and attempted to confirm a warrant. Vickers Decl.

Ex. 2, at 1. Plaintiff told the sergeant that he "was not supposed to do anything and was not allowed to walk." *Id.* The sergeant left to perform other duties and returned at 1:50 a.m. to find that Plaintiff had already left. *Id.* at 2. Plaintiff did not tell anyone that he was leaving prior to 2:00 a.m. *Id.* at 9.

An official complaint was lodged against Plaintiff for the night of December 16-17, 2015 accusing him of failure to perform his duties, untruthfulness, and disrespect to a supervisor. Vickers Decl. Ex. 2. During the internal affairs investigation that followed, Plaintiff told his supervisors that he had arrived at work at 10:00 p.m. on December 16 and that he had left at 2:00 a.m. on December 17. *Id.* at 6-7. When confronted with the sergeant having found him gone at 1:50 a.m., Plaintiff responded that it was customary to arrive and leave fifteen minutes early and was told that the custom was part of working as a corrections deputy and did not apply in the records department. *Id.* at 7-8.

The investigation concluded that allegations against Plaintiff were sustained and recommended that Plaintiff be terminated. Vickers Decl. Ex. 2, at 10-11. The investigation noted that the two most serious allegations were that of disrespect, based on Plaintiff's conduct during the interview, and untruthfulness regarding when he left his shift before he was confronted the sergeant finding him gone at 1:50 a.m. *Id.*

On January 20, 2016, the County notified Plaintiff that of their recommendation that he be terminated. Compl. ¶ 19. On January 26, 2016, the County terminated Plaintiff's employment. *Id.* at ¶ 20. The given reason for

Plaintiff's termination was "untruthfulness." Vickers Decl. Ex. 1, at 19; Ex. 3. Plaintiff did not grieve his termination. Vickers Decl. Ex. 1, at 18.

Plaintiff was eventually awarded a permanent partial disability. Vickers Decl. Ex. 1, at 21. Plaintiff's medical bills were paid by workers' compensation and Plaintiff received an award of $42,000 from workers' compensation. *Id.* at 21-23.

Plaintiff did not seek further employment in law enforcement both because of his physical limitations after the injury and because of the finding that he was untruthful. Vickers Decl. Ex. 1, at 20-21. Plaintiff testified that he was physically unable to work as a sheriff's deputy. *Id.* at 21. Plaintiff found alternative employment, which he enjoys more than his work as a corrections deputy. *Id.* at 5.

Plaintiff filed a tort claim notice on May 2, 2016. Vickers Decl. Ex. 4. On September 30, 2016, Plaintiff filed a complaint with Oregon Bureau of Labor and Industries ("BOLI") alleging unlawful discrimination and with the U.S. Equal Employment Opportunity Commission ("EEOC"). Vickers Decl. Ex. 5.; Ex. 6. Plaintiff commenced this action on May 22, 2017. ECF No. 1.

## DISCUSSION

Plaintiff brings claims for workers' compensation discrimination under ORS 659A.040(1) (Claim 1); discrimination on account of physical impairment under ORS 659A.112(1) and 42 U.S.C. § 12112 (Claim 2); failure to accommodate a physical impairment under ORS 659A.112(1) and (2)(e) and § 12112 (Claim 3); and discrimination and/or retaliation for use of FMLA leave (Claim 4). Defendant moves for summary judgment as to all claims.

I.   Timeliness

Defendant contends that at least some of the allegations underlying Plaintiff's claims for discrimination and/or retaliation are time-barred.

A. OTCA

Because Defendant is a public entity, Plaintiff's state law claims are subject to the Oregon Tort Claims Act. ORS 30.265(2); *see Griffin v. Tri-County Metro. Transp. Dist.*, 318 Or. 500, 506-07 (1994) (holding that employment discrimination actions are torts for purposes of the OTCA). Among other limitations, the OTCA provides that plaintiffs must give notice of their claim within 180 days of the loss or injury. ORS 30.275(1)-(2). In this case, Plaintiff gave his OTCA notice on May 2, 2016. Vickers Decl. Ex. 4. Plaintiff is therefore barred from asserting a state law claim that accrued prior to 180 days before May 2, 2016, which is November 4, 2015.

The Court therefore concludes that Plaintiff is time-barred from asserting a state-law claim that accrued prior to November 4, 2015. In that period, the only alleged discriminatory conduct is the internal affairs investigation into Plaintiff and his subsequent termination.

B. ADA Claims

Claims brought under the Americans with Disabilities Act ("ADA") are subject to the same procedures as a claim under Title VII. 42 U.S.C. § 12117(a). "When a charge of discrimination is initially filed with a state agency such as BOLI, both Title VII and the ADA impose a 300-day time limit." *Picouto v. Western Star Truck Plant Portland LLC*, No. CV-08-807-ST, 2010 WL 3607956, at *15 (D. Or. May 27, 2010)

(citing *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1107 (9th Cir. 1998) and *Douglas v. Cal. Dept. of Youth Auth.*, 271 F.3d 812, 823 n.12 (9th Cir. 2001)).

In this case, Plaintiff mase his complaint to BOLI and the EEOC on September 30, 2016. Vickers Decl. Ex. 5; Ex. 6. Plaintiff is therefore barred from maintaining a claim that accrued more than 300 days before that date, which is December 5, 2015. As with Plaintiff's state law claims, the only alleged conduct that occurred after that date was the internal affairs investigation and Plaintiff's subsequent termination.

## II.     FMLA Claims

Plaintiff's fourth claim alleges that Defendant discriminated "and/or" retaliated against him for exercising his rights under FMLA. Compl. ¶¶ 44-45. As a preliminary matter, Plaintiff's FMLA claim is at partially time-barred. Because Plaintiff does not allege a willful violation of his FMLA rights, the limitations period for his claim is two years. 29 U.S.C. § 2617(c). Plaintiff may not, therefore, base his claim on conduct occurring prior to May 22, 2015.

FMLA provides two theories of recovery: (1) the "interference" or "entitlement" theory, described in 29 U.S.C. § 2615(a)(1); and (2) the "retaliation" or "discrimination" theory, described in 29 U.S.C. § 2615(a)(2).

Here, Plaintiff describes his claim as one for retaliation and/or discrimination, Compl. ¶¶ 44-45, but Plaintiff's claim cites to § 2615(a)(1), and so the Court will consider Plaintiff's claim under both theories. *See Munger v. Cascade Steel Rolling Mills, Inc.*, 544 F. Supp.3d 1078, 1083 (D. Or. 2021) ("A claim of retaliation for the

exercise of FMLA rights is properly analyzed as an interference claim under section 2615(a)(1)." (internal quotation marks and citation omitted)).

For an interference claim, it is unlawful for an employer to "interfere with, restrain, or deny the existence of or the attempt to exercise any right provided under" FMLA. 29 U.S.C. § 2615(a)(1). To sustain a claim for FMLA interference, an employee must establish that "(1) he was eligible for FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." *Escriba v. Foster Poultry Farms*, 743 F.3d 1236, 1243 (9th Cir. 2014). "Where an interference claim is alleged pursuant to Section 2615(a)(1), a plaintiff must show by a preponderance of the evidence that his use of FMLA-protected leave was a negative factor in defendant's adverse employment decision in order to avoid summary judgment." *Shepard v. City of Portland*, 829 F. Supp.2d 940, 952-53 (D. Or. 2011) (internal quotation marks and citation omitted, alterations normalized).

Here, there is no evidence that Plaintiff's requests for FMLA leave were denied. Indeed, the Complaint alleges that Plaintiff requested and received multiple periods of FMLA leave. Nor is there evidence that Plaintiff's use of his FMLA leave was a factor in his eventual termination. The Court therefore concludes that Defendant is entitled to summary judgment as to Plaintiff's FMLA interference claim.

For a retaliation claim, it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made

unlawful" by FMLA. 29 U.S.C. § 2615(a)(2). "A retaliation claim under Section 2615(a)(2) requires proof that the employer took some discriminatory action against an employee who opposed a practice made unlawful by the FMLA." *Shepard*, 829 F. Supp.2d at 952. Where a plaintiff "alleges a prima facie case for retaliation or discrimination pursuant to Section 2615(a)(2), the *McDonnell Douglas* burden-shifting framework is implicated." *Id.* at 953. In this case, there is no allegation, and no evidence, that Plaintiff opposed any practice made unlawful by FMLA or that he was terminated for such opposition. The Court therefore concludes that Defendant is entitled to summary judgment as to Plaintiff's FMLA retaliation claim.

### III. Disability Discrimination

Plaintiff's second claim for relief alleges discrimination on account of physical impairment under ORS 659A.112 and 42 U.S.C. § 12112. Oregon law provides that it is unlawful for an employer to "discriminate in compensation or in terms, conditions or privileges of employment on the basis of disability." ORS 659A.112(1). The Oregon disability statutes "shall be construed to the extent possible in a manner that is consistent with any similar provisions of the federal Americans with Disabilities Act." ORS 659A.139. In order to establish a prima facie case, a plaintiff must show that he (1) is disabled or perceived as such; (2) is a qualified individual, meaning he is capable of performing the essential functions of the job; and (3) suffered an adverse employment action because of his disability. *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999) (discussing a prima facie disability discrimination claim under the ADA). Under the *McDonnell-Douglas* burden shifting framework, when a

plaintiff establishes a prima facie case, "the burden shifts to the [defendant] to offer a legitimate, non-discriminatory reason for the adverse employment decision." *Shepard*, 829 F. Supp.2d at 963.

Defendant asserts that Plaintiff cannot satisfy the requirement that he is a qualified individual. "A qualified individual with a disability is defined as an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (internal quotation marks and citation omitted). The plaintiff bears the burden of showing that he is a qualified individual. *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 990 (9th Cir. 2007). In this case, Plaintiff testified in his deposition that he was unable to meet the physical requirements of the corrections deputy position following his injury. Vickers Decl. Ex. 1, at 4. Plaintiff also testified that he did not pursue other law enforcement positions following his termination in part because he was unable to meet the physical demands of those jobs. *Id.* at 20-21. On this record, the Court concludes that Plaintiff has not met his burden of showing that he was a qualified individual.

In addition, Defendant has advanced a legitimate, non-discriminatory reason for Plaintiff's termination in that he was found to have been untruthful during the internal affairs investigation with respect to when he left work on the night of December 16. Employers may validly terminate an employee for misconduct, rather than for disability. *Newland v. Dalton*, 81 F.3d 904, 906 (9th Cir. 1996).

On this record, the Court concludes that Defendant is entitled to summary judgment with respect to Plaintiff's claim for disability discrimination.

### IV.  Failure to Accommodate

Plaintiff's third claim alleges that Defendant failed to make a reasonable accommodation to the known physical limitations of Plaintiff.  An employer discriminates by not making "reasonable accommodation to the known physical or mental limitations of a qualified individual with a disability." ORS 659A.112(2).  To establish a prima facie case for failure to accommodate, a plaintiff must demonstrate that (1) he is a disabled within the meaning of the ADA; (2) "he is a qualified individual able to perform the essential functions of the job with reasonable accommodation;" and (3) he suffered an adverse employment action because of his disability.  *Allen v. Pacific Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003).

In this case, Plaintiff has failed to show that he is a qualified individual for the reasons discussed in the previous section.  In addition, Plaintiff was fired based on a finding of misconduct by an internal affairs investigation.  And finally, the Court notes that Plaintiff was, in fact, offered a light duty assignment and was only terminated after Defendant discovered that Plaintiff had spent hours doing no work in that assignment.  On this record, the Court concludes that Defendant is entitled to summary judgment on Plaintiff's claim for failure to accommodate.

### V.  Injured Worker Discrimination

Plaintiff's first claim for relief alleges that Defendant discriminated against him for invoking workers compensation procedures of Chapter 656 of the Oregon

Revised Statutes in violation of ORS 659A.040. "To establish a prima facie case of injured worker discrimination, a plaintiff must show that 1) he invoked the workers' compensation system; 2) he was discriminated against in the tenure, terms or conditions of his employment; and 3) the discrimination was caused by the employee's invocation of workers' compensation." *Shepard*, 829 F. Supp.2d at 962. "To show a causal link between plaintiff's use of workers' compensation and any adverse employment action, plaintiff must establish that in the absence of a discriminatory motive, he would have been treated differently," and "[m]ere temporal proximity, between the filing a workers' compensation claim and termination is insufficient without more to satisfy the causation element." *Id.* The *McDonell-Douglas* burden shifting framework applies if the plaintiff establishes a prima facie case. *Id.*

In this case, Defendant contends that Plaintiff cannot establish causation. First, the Court notes that Plaintiff filed his workers' compensation claim in November 2013 and was not terminated until January 2016. Compl. ¶¶ 8, 20. Although temporal proximity is insufficient to establish causation, its absence weighs against causation. In addition, as discussed in the previous sections, Defendant has advanced a legitimate, non-discriminatory reason for Plaintiff's termination. The Court therefore concludes that Defendant is entitled to summary judgment on this claim.

## CONCLUSION

Defendant's Motion for Summary Judgment, ECF No. 47, is GRANTED and this case is DISMISSED. Final judgment shall be entered accordingly.

It is so ORDERED and DATED this ___15th___ day of September 2022.

                                         /s/Ann Aiken
                                         ANN AIKEN
                                         United States District Judge